IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

ROBERT THOMAS
JOHNSON,

        **Plaintiff,**

        **v.**                                CASE NO. 10-3104-SAC

**POTTAWOTOMIE TRIBAL**
**POLICE DEPARTMENT,**
**et al.,**

        **Defendants.**

## MEMORANDUM AND ORDER

This civil rights complaint, 42 U.S.C. § 1983, was filed by an inmate of the Federal Correctional Institution in El Reno, Oklahoma. The filing fee has been paid. Plaintiff complains of acts that allegedly occurred years before, as well as during, the stop, search, seizure, and arrest of plaintiff by defendant Hurla culminating in plaintiff's federal conviction and current confinement. He names as defendants the Pottawotomie Tribal Police Department (PTPD), and PTPD employees Chief Scott, Chief Boswell, and John M. Hurla. He asserts that the "actions of the Tribal Police Dept." and Hurla caused the "deprivation of (his) constitutional rights and civil liberties".

## FACTUAL BACKGROUND

The court takes judicial notice of criminal case <u>United States v. Johnson</u>, No. 08-40010-01-RDR. The factual background has been garnered from plaintiff's allegations in his complaint, "Supporting Memorandum of Law", and exhibits, as well as from his criminal case. For purposes of screening, the background facts appear to be as

follows.

On August 19, 2007, after leaving the parking lot of the Prairie Band Casino and Resort, Mr. Johnson was stopped, his vehicle was searched, and he was arrested "based solely upon the alleged probable cause" arising from "drug dog deployment to (his) vehicle" when it had been parked in the casino parking lot. Defendant Hurla "handled" this deployment with a drug dog, while "purporting to be a legally certified drug dog team." Mr. Johnson does not reveal, but the record in the criminal case indicates that other officers were involved the drug dog deployment, and his arrest, as well as the search and seizure of his vehicle. Illegal drugs and drug paraphernalia were apparently found in plaintiff's car.

Plaintiff was charged under Tribal Law for possession of narcotics[1]; however, on February 14, 2008, "the state dismissed the charges." On March 10, 2008, the United States "unsealed an indictment charging a violation of 21 U.S.C. § 841." After two suppression hearings, on May 29, 2009, the "final working day" before commencement of trial, plaintiff accepted a plea agreement and pled guilty. He was sentenced to 38 months in federal prison.

Plaintiff alleges that the PTPD improperly hired and employed defendant Hurla as a dispatcher and later as an officer when Mr. Hurla was ineligible as a matter of state law for certification as a law enforcement officer[2].

---

[1] Plaintiff alleges he was charged with possession of marijuana, prescription pills, and drug paraphernalia. He does not explain by what process these charges were dismissed, which presumably entailed proceedings in Tribal Court.

[2] More specifically, plaintiff alleges the following. Defendant Hurla was hired by the PTPD on October 31, 2001, while he was subject to a diversion agreement on 1999 charges of burglary and felony theft. The PTPD qualification requirements included that an employee successfully pass a background check and

2

**CLAIMS**

Mr. Johnson claims many things based upon this factual scenario, and alleges three main counts. As count I of his complaint, he claims that the stop, search, and seizure leading to his federal conviction violated his rights under the Fourth and Fourteenth Amendments against unreasonable search and seizure because Hurla lacked legal authority and jurisdiction to perform the drug deployment[3]. On this basis, he claims that the inculpatory evidence seized as a result of the search of his vehicle was inadmissible, and concludes that defendants' actions caused him to

---

be "insurable with the Nations Insurance." Hurla disclosed upon his application for employment with the PTPD that he "got a two year diversion" in connection with a stolen dirt bike. On September 20, 2002, Hurla applied for admission to the law enforcement basic training course, at which time the PTPD presumably certified that Hurla had no criminal record. Hurla successfully completed the requirements of the diversion agreement. Hurla was employed as a "Tribal K-9 officer from May 1, 2007, until April 29, 2009, and at other times as a dispatcher and an officer.

In December, 2009, plaintiff submitted a Freedom of Information Act request to the Kansas Commission on Peace Officers Standards and Training (Commission) seeking "any information pertaining to police misconduct" by Hurla, and received a response on February 10, 2010. Plaintiff alleges and provides an exhibit showing that on June 24, 2009, the Commission filed a summary order with retroactive effect revoking Hurla's law enforcement officer certification. In that order they found: "clear and convincing evidence exists that John M. Hurla was diverted on or after July 1, 1995, for two felony crimes" under Kansas law. They noted that "the legislature has determined that individuals who were diverted for felony crimes on or after July 1, 1995, are ineligible to serve as law enforcement officers." They also noted that Hurla's performance had been exemplary.

Plaintiff claims that Hurla's "law enforcement certificate was acquired in violation of K.S.A. §§ 74-5605 and 74-5617, "Tribal Police Dept policy and customs", and "federal law". He also claims that state law and Tribal law require that a drug dog and his handler be certified as a team by the Kansas Highway Patrol.

[3]   Plaintiff theorizes that the "felony crimes committed in 1999" rendered Hurla ineligible for certification so that he had no legal authority or jurisdiction to perform any duties in the capacity of Tribal Law Enforcement Officer. He argues that the drug dog deployment, which provided probable cause for plaintiff's stop, search, and arrest, was thus "handled by an individual that was legally ineligible to serve as a law enforcement K-9 officer;" and that citizens who are not properly certified law enforcement officers cannot provide probable cause by deploying a drug dog to another citizen's vehicle. He claims that, as a result, Mr. Hurla lacked authority and jurisdiction on August 19, 2007, to perform the drug dog deployment on plaintiff's vehicle, and to search his vehicle or seize any property. He thus asserts that the probable cause for the search and seizure in his case is "void ab initio".

3

be unlawfully arrested and illegally incarcerated.

As count II, he claims defendants violated his Fifth and Fourteenth Amendment rights by intentionally conspiring with each other "to suppress exculpatory evidence" from plaintiff, the prosecutor, and the court. In support he maintains that Hurla's ineligibility to serve as a law enforcement officer was exculpatory evidence, and that it was withheld from plaintiff and the trial court. He contends that its withholding amounted to police misconduct and obstruction of justice. He claims that this evidence "would have exonerated him of the crime for which he is now incarcerated[4]." He additionally alleges that he did not receive the evidence regarding Hurla's ineligibility until February 10, 2010[5], which was after his plea and sentencing, and therefore argues it is "new evidence." He states that this action is "the direct result of newly discovered evidence".

As Count III, plaintiff claims that "both defendants" violated

---

[4] Plaintiff alleges that this evidence was not presented in his two suppression hearings and was not before the court when it determined the legal and factual basis for his plea. He claims that had Judge Rogers had the information regarding the Commission's findings, "the outcome" in his criminal case "would have been very different." He also claims that the trial court "would have concluded" that Hurla was "disqualified" under Kansas law "from the entire arrest process." He further alleges that his defense counsel would have filed a motion to dismiss based upon this evidence, and an investigation into this police misconduct would have ensued. In addition, he alleges that had he known the PTPD's employment of Hurla was invalidated he would never have pled guilty and would have insisted on going to trial.

Contrary to at least some of these allegations, the criminal case file indicates that Mr. Johnson presented the argument to Judge Rogers that defendant Hurla was not a qualified law enforcement officer and his arrest, stop, search, and seizure were invalid as a result. Judge Rogers issued an order rejecting Johnson's argument while accepting his allegation that Hurla was not properly certified. That order was affirmed by the Tenth Circuit Court of Appeals. Johnson also argued to the trial court that Hurla could not lawfully testify as a law enforcement officer, but the court found Hurla could testify, as a citizen if not as an officer.

[5] Evidence is newly discovered based upon when the facts became available for discovery, not when plaintiff received a response to his inquiry. Moreover, a claim of newly discovered evidence is a challenge to plaintiff's conviction. How it would be the basis for a money damages claim, particularly at this juncture, is not suggested.

4

his Fourth and Fourteenth Amendment rights in that they "committed fraudulent acts," "obstructed the legal process," failed to supervise, and abused process[6], which led to plaintiff's "illegal arrest and incarceration." Perhaps in support of this count, plaintiff alleges that Hurla testified untruthfully in suppression hearings that he was a lawfully certified police officer, and the PTPD allowed this perjury[7]. He thus claims that defendants provided false, fraudulent, and misleading evidence to the federal grand jury and the federal trial court. He also claims that "the direct result" of the actions of defendants Scott and Boswell was "the fraudulent and illegal actions taken by John Hurla against this plaintiff."

Plaintiff also makes allegations, which might be considered as Count IV, that his "evidence" establishes that the PTPD employed Hurla knowing he had committed two Kansas felonies, and thereby neglected its responsibility to plaintiff and the public. Johnson seeks damages based upon Chief of Police Scott's actions in hiring Hurla in October 2001, and the PTPD's certification in 2002 to the

---

[6] Plaintiff has filed a document entitled "Motion to Amend in Support of Original Complaint Claim of 'Abuse of Process'" (Doc. 6). This is not a proper Amended Complaint. In order to properly amend a complaint, plaintiff must file a complete "Amended Complaint". See Fed.R.Civ.P. Rule 15. An Amended Complaint supercedes the original complaint, and therefore must contain all claims the plaintiff intends to pursue in the action including those raised in any prior complaint. Any claims not included in the Amended Complaint shall not be considered further by the court. The court liberally construes this document as a Supplement rather than an Amended Complaint, and has considered the arguments therein. If plaintiff hereafter files a document either described as, or that in essence is, an amendment that does not conform to the federal rules, this court will treat it as the Amended Complaint and disregard any matter from the original complaint that is not contained in the Amended Complaint.

[7] He claims that Hurla lacked authority to testify before the grand jury and the district court, and that the grand jury and court lacked jurisdiction as a result. He asserts that a warrant signed by someone without legal authority is void, and thus that the search & seizure violated his 4th Amendment rights.

training center that Hurla had no criminal record. He also seeks damages based upon Chief of Police Boswell's "continuing Hurla's employment" even after notification of the revocation of his certification in 2009. He argues the fact that Hurla is "still employed" by the PTPD shows reckless disregard for the welfare of plaintiff and society. He claims these actions are contrary to regulatory hiring requirements, and amount to "outrageous police misconduct" and misuse of positions of public trust to deceive the public. He further claims defendants obstructed legal process, committed the tort of abuse of process, and used their public position to conceal their illegal acts and misconduct. He also complains that defendant Hurla has had improper access to police records, weapons, and other items available only to police officers. He asserts that defendants Scott and Boswell are responsible for all that happened to him because they knowingly employed a felon as a law enforcement officer.

**RELIEF REQUESTED**

In this action, Mr. Johnson avoids expressly seeking to overturn his federal conviction, although that appears to be his aim. Instead, he seeks actual and punitive damages only.

**SCREENING**

Because Mr. Johnson is a prisoner and is seeking redress from a governmental entity and an officer or employee of a governmental entity, the court is required by statute to screen his complaint and to dismiss the complaint or any portion thereof that is frivolous, fails to state a claim on which relief may be granted, or seeks

6

relief from a defendant immune from such relief. 28 U.S.C. § 1915A(a) and (b). Having screened all materials filed, the court finds the complaint is subject to being dismissed for reasons that follow.

**GENERAL STANDARDS**

A pro se plaintiff's pleadings are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. McBride v. Deer, 240 F.3d 1287, 1290 (10th Cir. 2001); Shaffer v. Saffle, 148 F.3d 1180, 1181 (10th Cir.)(quoting Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991)), cert. denied, 525 U.S. 1005 (1998). At the same time, the liberal construction of the plaintiff's complaint "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." Riddle v. Mondragon, 83 F.3d 1197, 1202 (10th Cir. 1996). It is not the proper function of the district court to assume the role of advocate for the pro se litigant. Id. "[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based." Id. A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Papasan v. Allain, 478 U.S. 265, 286 (1986).

7

**DISCUSSION**

### 1. Claims Relating to Criminal Conviction

Any suggestion in this action that Mr. Johnson's guilty plea was improperly entered or that his federal conviction is invalid may only be raised in a habeas corpus action. See Preiser v. Rodriguez, 411 U.S. 475, 504 (1973). Since Mr. Johnson is a federal prisoner, his exclusive remedy for such claims is by motion pursuant to 28 U.S.C. § 2255[8] filed in the sentencing court. Mr. Johnson waived his right to seek relief under § 2255 in conjunction with his guilty plea, and may have already unsuccessfully sought relief in a § 2255 motion[9]. He may not simply circumvent those valid limitations by seeking to invalidate his conviction in this civil action. Nor do those circumstances mean he can use a civil rights action for money damages as an alternative means for challenging his criminal conviction. The court finds it has no jurisdiction to consider plaintiff's allegations that amount to challenges to his federal conviction.

The court comments, in accord with findings of the trial court in plaintiff's criminal case, that the fact that one of the officers involved in his stop and arrest and the search and seizure of his vehicle was eventually found not to have been properly certified as a law enforcement officer is not so significant as to vitiate the

---

[8] Plaintiff cites numerous cases that are clearly distinguishable from this case. None of the cases he cites involving illegal arrests, invalid warrants, illegal searches, withholding of exculpatory evidence, or falsifying of evidence was based on such a tangential fact as that a law enforcement officer was not properly certified.

[9] If Mr. Johnson seeks to challenge his federal conviction but has already filed one § 2255 motion in the sentencing court, he may not file a second and successive § 2255 motion without obtaining prior approval from the Tenth Circuit Court of Appeals.

probable cause in his case.  Nor does plaintiff allege facts indicating it had any bearing whatsoever on the veracity of his plea or the validity of his conviction.

### 2. Claims for Money Damages based on Federal Law

In <u>Heck v. Humphrey</u>, 512 U.S. 477, 487 (1994), the United States Supreme Court reasoned that civil actions "are not appropriate vehicles for challenging the validity of outstanding criminal judgments." The Court thus held that a claim for damages is not cognizable under section 1983 if a judgment in plaintiff's favor would necessarily imply the invalidity of his conviction or sentence, unless the prisoner can show that the prior conviction had previously been invalidated. <u>Heck</u>, 512 U.S. at 486-87. Consequently, when a plaintiff files a civil rights action in a federal district court after having been convicted, the "district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." <u>Id</u>. at 487. In <u>Heck</u>, the Supreme Court specifically found:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

<u>Id</u>. at 486-87; <u>Muhammad v. Close</u>, 540 U.S. 749, 751 (2004)(Where success in a prisoner's § 1983 damages action would implicitly question the validity of his criminal conviction, "the litigant must

9

first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence.").

Here, plaintiff clearly seeks to establish in a civil trial for money damages that his arrest and the search and seizure of his vehicle were without probable cause[10] so that all incriminating evidence was inadmissible, and that his guilty plea was improvident. He repeatedly argues that his claims indicate his conviction was invalid and his imprisonment is illegal. He acknowledges the possible impact of Heck upon his claims, but attempts to overcome Heck by expanding upon the injuries he has allegedly suffered. However, he seeks money damages for economic and other circumstances that normally result from incarceration[11]. He does not allege, and it does not appear from the record in his criminal case, that he has invalidated his conviction. The court concludes that plaintiff's claims are barred by Heck, and must dismissed on that basis, without prejudice. See Fottler v. United States, 73 F.3d 1064, 1065 (10th Cir. 1996).

Furthermore, it appears from the face of plaintiff's complaint that those federal claims that are not premature under Heck are

---

[10] In cases involving claims of illegal search and seizure, the Tenth Circuit has acknowledged that Heck does not automatically bar such claims. See Beck v. City of Muskogee Police Dept., 195 F.3d 553, 557-59 (10th Cir. 1999)(rejecting a blanket application of Heck and noting that Heck did not automatically bar the plaintiff's claims of unreasonable search and seizure). However, as noted, plaintiff clearly asserts that his claims necessarily imply that his conviction was unlawful, and this he would have to prove to recover under on his claims.

[11] The injuries Mr. Johnson describes are ones arising from his being arrested, convicted, and imprisoned and accordingly fall squarely within Heck. See, e.g., Crow v. Penry, 102 F.3d 1086, 1087 (10th Cir. 1996)(dismissing pursuant to Heck Fourth and Fifth Amendment claims alleging that a probation officer and others conspired to have search and arrest warrants issued where the only relief sought was for damages resulting from the arrest and related incarceration.).

barred by the applicable statute of limitations and should be dismissed for failure to state a claim upon which relief may be granted.  In § 1983 actions, the applicable statute of limitations is that of the forum state's for personal injury actions.  The Kansas statute of limitations for personal injury actions is two years.  The Tenth Circuit has determined that "[c]laims arising out of police actions toward a criminal suspect, such as arrest, interrogation, or search and seizure, are presumed to have accrued when the actions actually occur."  See Beck, 195 F.3d at 558 (claim that police acted outside their jurisdiction accrued at time of incident)(quoting Johnson v. Johnson County Com'n Bd., 925 F.2d 1299, 1301 (10th Cir. 1991)).  It follows that plaintiff's claims of an illegal stop, arrest, search, and seizure accrued at the time these actions occurred, which was on August 19, 2007.  Since plaintiff did not file his complaint by August 19, 2009, his claims for money damages based on these events are barred by the two-year statute of limitations.

### 3. Other Claims

Under 42 U.S.C. § 1983, a plaintiff must allege that the defendants have violated his or her rights under the Constitution and laws of the United States while they acted under color of state law.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970).  The court has reviewed plaintiff's numerous other allegations regarding defendants' hiring practices, misrepresentation, false statements,

fraud, improper and even fraudulent certification[12], malicious prosecution[13], and abuse of process, among others, and finds that with respect to these claims plaintiff does not allege facts demonstrating a violation of any "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." See 42 U.S.C. § 1983. For example, plaintiff's complaints regarding the hiring, certification, and retention of defendant Hurla, at most, amount to claims that defendants violated state regulatory laws. It is well-settled that violations of state laws are not grounds for relief under § 1983. Likewise, even if some of plaintiff's allegations could be construed as valid state law tort claims they would not be cognizable under § 1983. This court is not obliged to exercise supplemental jurisdiction over any state law claims in the event that plaintiff's federal constitutional claims are dismissed. See 28 U.S.C. § 1367(c)(3).

The court further finds that plaintiff has not alleged facts establishing that he has standing to sue defendants based upon their hiring practices and other alleged violations of state law with

---

[12] Plaintiff's claims that the PTPD knowingly and fraudulently certified that Hurla had not been diverted for a felony are also not supported by sufficient allegations of fact. The facts alleged indicate that Hurla disclosed his involvement in a diversion agreement in his application for employment, and sought certification through the appropriate process. No facts are alleged showing that defendant Scott made knowing misrepresentations to the PTPD or the KCPOST, or made any representation in bad faith. Plaintiff's claims that defendant PTPD supervisory employees failed to train officers to comply with constitutional safeguards are also conclusory statements rather than facts showing the violation of any of plaintiff's federal constitutional rights. Likewise, plaintiff's statement that the PTPD "knowingly employed a felon" who was ineligible to serve as a law enforcement officer is another conclusory statement, not supported by the facts he alleges.

[13] Plaintiff asks the court if he can proceed with a malicious prosecution claim based upon the favorable termination of state charges. The court cannot provide legal advice. Instead, it has authority to rule upon claims presented by litigants. Plaintiff has presented no facts or legal basis to support a claim of malicious prosecution in federal court, which requires the violation of a federal constitutional right. The court expresses no opinion as to his ability to proceed on a malicious prosecution claim in state court.

regard to the employment of Mr. Hurla.

Finally, the court notes that most of plaintiff's claims regarding the hiring and certification of defendant Hurla took place in 2001 and 2002, well beyond the two-year statute of limitations discussed earlier.

Even though the court is not convinced that plaintiff can cure these deficiencies in his complaint, he will be given time to show cause why this action should not be dismissed, without prejudice, for the reasons stated in this Memorandum and Order. If he fails to file a proper response within the time provided, this action may be dismissed without further notice.

**MOTION FOR SERVICE OF SUMMONS**

The court finds that plaintiff's motion for service of summons should be denied, without prejudice. If this action survives screening, the court will automatically order the issuance of summons.

**IT IS FURTHER ORDERED** that plaintiff is given thirty (30) days in which to show cause why this action should not be dismissed for the reasons stated in this Memorandum and Order.

**IT IS FURTHER ORDERED** that plaintiff's Motion for Service of Summons (Doc. 5) is denied, without prejudice; and plaintiff's "Motion to Amend Complaint in Support of Original Complaint" (Doc. 6) is treated as a motion to supplement complaint, and granted.

**IT IS SO ORDERED**.

Dated this 15th day of June, 2010, at Topeka, Kansas.

s/Sam A. Crow
U. S. Senior District Judge